UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KELLY MANSHIP | CIVIL ACTION |
| VERSUS | NO. 25-426 |
| JOSHUA THRONE | SECTION: "D" (3) |

**REPORT AND RECOMMENDATION**

Defendant Joshua Throne has filed a Motion to Enforce Settlement Agreement (R. Doc. 89). Throne requests the Court order Plaintiff, Kelly Manship, to execute and return settlement documents: (1) the "Confidential Full and Final Receipt, Release and Settlement Agreement with Reservation of Rights" and (2) the "Second Amendment to Condominium Declaration of Whitney and Sloo Two Condominium, a Condominium Association." Manship, now proceeding pro se,[1] opposes the motion.[2] Having considered the submissions of counsel, the record, and the applicable law, the Court recommends that the Motion be granted.

**I. Background**

Manship and Throne own two separate units in a three-unit condominium complex. They repeatedly disagreed on issues such as use and maintenance of a deck and whether Throne could park his low speed vehicle (colloquially, "golf cart") in the condominium complex's covered parking lot. Manship sued Throne in the Civil

[1] Manship's counsel withdrew after she refused to sign the settlement documents. R. Docs. 94, 98.
[2] R. Doc. 102.

District Court for the Parish of Orleans under various provisions of state law.[3] Throne removed that lawsuit to this Court based on diversity jurisdiction.[4]

The undersigned engaged in extensive settlement negotiations with the parties over a period of months. Manship participated personally (along with her counsel) in two in-person settlement conferences before the undersigned. Manship and Throne settled all claims in the above-captioned matter and memorialized the material terms on the record before the undersigned on December 1, 2025.[5] They agreed to prepare and execute a written release and amendment to the condominium documents consistent with that settlement.[6]

On December 2, 2025, the District Court issued an Order of Conditional Dismissal.[7] On May 12, 2026, Throne filed the instant Motion to Enforce Settlement Agreement, contending that Manship has failed to execute and return the settlement documents, in violation of her on-the-record settlement agreement (and subsequent email correspondence confirming that agreement).[8]

## II. Law and Analysis

The Court's December 2, 2025 Order of Conditional Dismissal specifically retained jurisdiction to enforce the compromise agreed upon by the parties within a

---

[3] R. Doc. 52.
[4] Separate litigation by which Throne obtained a protective order against Manship remained in state court.
[5] R. Doc. 82. The settlement was without prejudice to Throne's right to continue prosecuting his right to a protective order in state court.
[6] R. Doc. 89-3 at 6
[7] R. Doc. 83.
[8] R. Doc. 89.

reasonable time.[9] If the Court "treat[s] the parties' settlement as part of its dismissal order[] by retaining jurisdiction to enforce the settlement, [] breaching the settlement would violate the court's order, 'and ancillary jurisdiction to enforce the agreement would therefore exist.'" *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 451–52 (5th Cir. 2022) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)). The parties have not yet consummated settlement. Thus, "[e]nforcing the settlement falls within the court's unquestionable power to enforce its own decrees." *Id.* (citation omitted).

The parties dispute whether their settlement is enforceable. As one section of this Court has explained:

> Louisiana substantive law controls in this action, based on diversity jurisdiction. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R Co. v. Tompkins*, 304 U.S. 64, 78 (1938)) (additional citations omitted). Louisiana Civil Code article 3071 provides that "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." An enforceable compromise agreement under article 3071 has two essential elements: "(1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences." *Trahan v. Coca Cola Bottling Co. United, Inc.*, 894 So. 2d 1096, 1104 (La. 2005). As explained by the Louisiana Supreme Court, "to be enforceable ... the compromise must either be reduced to writing and signed by the parties or their agents, or be recited in open court and be capable of transcription from the record of the proceeding." *Id.* Therefore, "[a] compromise agreement recited on the record in open court will be treated as though it is a written contract, conferring upon each party the right of judicial enforcement of performance of the agreement even though the substance may later be written in a more convenient form." *Morris, Lee & Bayle, LLC v. Macquet*, 192 So. 3d 198, 209 (La. App. 4 Cir. 2016) (citing *Trahan*, 894 So. 2d at 1104).

---

[9] R. Doc. 83.

*Mercadel v. E-Claim.com, LLC*, No. 22-5222, 2024 WL 3468337, at *2 (E.D. La. Apr. 2, 2024).

On December 1, 2025, the parties negotiated a settlement of all claims.[10] The material terms of the settlement were memorialized on the record before the undersigned, the parties, and counsel and were recorded by a court reporter.[11] All parties confirmed on the record that they were entering into the agreement knowingly and voluntarily and with the intent to end the litigation.[12] Thus, there is an enforceable and binding settlement agreement "conferring upon each party the right of judicial enforcement . . . even though the substance may later be written in a more convenient form." *See id.* (quotations and citations omitted).

In opposing the motion, Manship objects to two provisions of the settlement documents prepared by Throne and his counsel. The objections relate to Manship's standard parking spot and Throne's golf-cart parking spot, respectively. As to Manship's parking spot, the parties dispute whether their settlement entitles any subsequent purchaser of Manship's unit to use the same spot. The settlement documents prepared by Throne and his counsel state: "Kelly Manship, Owner of Unit 2, shall have use of a current covered parking space."[13] Manship would like to modify those documents to state: "The owner of Unit 2, shall have the use of the current covered parking space, Owned by Unit 2."[14] The terms to which Manship agreed in

[10] R. Doc. 82.
[11] *Id.*
[12] R. Doc. 89-3 at 7–8.
[13] R. Doc. 100-1 at 30.
[14] R. Doc. 102 at 3.

open court, however, state only that "Ms. Manship shall be entitled to continue to have use of her current covered parking space."[15] The parties did not agree as part of that settlement that any future owner of Manship's unit would be entitled to that same right of use. Thus, the documents prepared by Throne and his counsel are consistent with the parties' enforceable agreement.

Manship contests Throne's right to a parking spot for his golf cart. The settlement documents prepared by Throne and his counsel state:

> Joshua Throne, Owner of Unit 3, shall be allowed to park his low speed vehicle ("LSV") (colloquially "golf cart") in the center parking space in front of the shed owned by Kelly Manship, Owner of Unit 2, on the condition that he leaves three (3) feet of clearance between the front of the LSV and the shed and agrees to move his LSV at the request of Kelly Manship, Owner of Unit 2 should she require additional access to the shed.[16]

Manship would like to modify those documents to remove Throne's right to a parking spot for his golf cart.[17] But Manship agreed to a binding, on the-record settlement, that stated: "Mr. Throne may park his golf cart in front of Ms. Manship's shed but agrees to move it in the event she needs additional access and shall not park his golf cart within three feet of the door, the front of the shed."[18] Manship cannot back out of that agreement.

## III. Conclusion

As set forth above, the parties entered into an enforceable settlement agreement. Manship cannot unilaterally alter the terms of the settlement based on a

---

[15] R. Doc. 89-3 at 4:9–11.
[16] R. Doc. 100-1 at 30.
[17] R. Doc. 102 at 3.
[18] R. Doc. 89-3 at 4:11–14.

recent[19] change of heart. Thus, Manship must execute the "Confidential Full and Final Receipt, Release and Settlement Agreement with Reservation of Rights"[20] before a notary and two witnesses and also execute the "Second Amendment to Condominium Declaration of Whitney and Sloo Two Condominium, a Condominium Association."[21]

Accordingly,

**IT IS RECOMMENDED** that the Motion (R. Doc. 89) be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that Manship be ordered to: (1) execute the Confidential Full and Final Receipt, Release and Settlement Agreement with Reservation of Rights[22] before a notary and two witnesses; (2) execute the Second Amendment to Condominium Declaration of Whitney and Sloo Two Condominium, a Condominium Association;[23] and (3) provide the executed documents to defense counsel within fourteen days of the District Court's enforcement order.

**IT IS FURTHER RECOMMENDED** that the District Court order the parties to file a notice of compliance confirming execution of the settlement documents.

**IT IS FURTHER RECOMMENDED** that the District Court dismiss the above-captioned matter with prejudice after the notice of compliance is filed.

---

[19] The record indicates that Manship agreed to execute the settlement documents and even emailed a photograph of a signature page indicating that she had signed at least one of them. *See* R. Doc. 100-1 at 11–12.
[20] *Id*. at 19–26.
[21] *Id*. at 28–35. There is no objection to the form of these documents, which reflect that the settlement relates to real property.
[22] R. Doc. 100-1 at 19–26.
[23] *Id*. at 28–35.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 17th day of July, 2026.

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE