**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KELLY MANSHIP** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-426** |
| **JOSHUA THRONE** | **SECTION: D (3)** |

## ORDER AND REASONS

Before the Court is Defendant's Motion to Enforce Settlement Agreement, filed by Joshua Throne.[1] Kelly Manship, proceeding as a *pro se* plaintiff, opposes the Motion.[2] The Motion was referred to the assigned Magistrate Judge for hearing and determination, including evidentiary hearing, if necessary, and submission of Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).[3] The Magistrate Judge held an evidentiary hearing on July 14, 2026,[4] and issued a Report and Recommendation on July 17, 2026, recommending that the Motion be granted.[5] Defendant timely-filed an Objection to the Report and Recommendation, asserting that the Magistrate Judge failed to grant relief on his claim for attorney's fees.[6] Without seeking leave of Court, Plaintiff filed a Response to Defendant's Objection

[1] R. Doc. 89.
[2] R. Doc. 102. The Court notes that Plaintiff's prior counsel also filed a response to the Motion, advising the Court that they had been discharged by Plaintiff, but that they had advised Plaintiff of all pending deadlines and hearing dates, including the deadline to oppose the instant Motion and the July 14, 2026 evidentiary hearing on the Motion. R. Doc. 97.
[3] R. Doc. 91.
[4] R. Doc. 103.
[5] R. Doc. 105.
[6] R. Doc. 107.

on September 11, 2026,[7] and filed an Addendum to Exhibit B of her Response on September 28, 2026.[8]

The Court, having considered the Motion, the Opposition, the record, the applicable law, the Report and Recommendation of the United States Magistrate Judge, Defendant's Objection to the Report and Recommendation, and Plaintiff's untimely Response to the Objection, hereby overrules Defendant's objection and approves the Report and Recommendation of the United States Magistrate Judge and adopts it as its opinion in this matter.

## I. FACTUAL AND PROCEDURAL BACKGROUND[9]

This matter concerns an ugly dispute between neighbors. Plaintiff and Defendant own two separate units in a three-unit condominium complex in New Orleans. They have repeatedly disagreed on issues, including the use and maintenance of a shared deck and whether Defendant can park his low speed vehicle (colloquially, his "golf cart") in the condominium complex covered parking lot.[10] Plaintiff sued Defendant in Civil District Court for the Parish of Orleans on or about August 13, 2024, asserting claims under various provisions of state law.[11] Defendant removed the case to this Court on February 28, 2025, on the basis of diversity jurisdiction.[12] As noted in the Report and Recommendation, a separate litigation in

---

[7] R. Doc. 108.
[8] R. Doc. 109.
[9] The Court adopts the factual and procedural background of the case as set forth in the Magistrate Judge's Report and Recommendation, to which there was no objection.
[10] R. Doc. 105 at p. 1.
[11] R. Doc. 1-1.
[12] R. Doc. 1. In the Notice of Removal, Defendant claimed that he had not yet been served with a copy of the state court Petition and that Plaintiff never sent a conformed copy of the Petition to him or his counsel and only provided an unfiled courtesy copy. *Id.* at ¶ 2. Defendant asserted that despite the

which Defendant obtained a protective order against Plaintiff remains pending in state court.[13]

According to the Report and Recommendation, the assigned Magistrate Judge engaged in extensive settlement negotiations with the parties over a period of months.[14] Plaintiff personally participated, along with her counsel, in two in-person settlement conferences held by the Magistrate Judge.[15] Plaintiff and Defendant reached a settlement as to all of the claims in this matter, and memorialized the material terms on the record before the Magistrate Judge on December 1, 2025.[16] The Report and Recommendation notes that the settlement was without prejudice to Defendant's right to continue prosecuting his right to a protective order in state court.[17] As part of the settlement agreement, the parties agreed to prepare and execute a written release and amendment to the condominium documents consistent with their settlement agreement.[18]

---

fact that Plaintiff's counsel had actual knowledge that Defendant resides in California, Defendant's counsel discovered on February 20, 2025 that Plaintiff had filed an *Ex Parte* Motion to Appoint Curator, alleging that Defendant was absentee and that Plaintiff had made "diligent efforts" to serve him. *Id.* (*citing* R. Doc. 1-1 & 1-2). Defendant alleged that neither Plaintiff nor her counsel contacted Defendant before filing the motion, despite the fact that both have his email address and telephone number. R. Doc. 1 at ¶ 2. Defendant further alleged that neither Plaintiff nor her counsel contacted defense counsel to request an address for long arm service, acceptance of service by counsel, or waiver of service by Defendant, even though Plaintiff's counsel has been in contact with defense counsel consistently since April 26, 2024. *Id.* (*citing* R. Doc. 1-3). Defendant asserted that removal was timely based upon his discovery of the Motion to Appoint Curator on February 20, 2025. R. Doc. 1 at ¶¶ 4–6 (*citing* R. Docs. 1-6 through 1-10).

[13] R. Doc. 105 at p. 2, n.4. *See* R. Doc. 13-1 at pp. 1, 3, & 4 (*citing* R. Docs. 13-2 & 13-3).

[14] R. Doc. 105 at p. 2.

[15] *Id.*

[16] *Id.* (*citing* R. Doc. 82).

[17] R. Doc. 105 at p. 2, n.5.

[18] R. Doc. 105 at p. 2.

On December 2, 2025, the undersigned issued an Order of Conditional Dismissal after being advised by the Magistrate Judge that the parties had reached a settlement of all claims.[19]

Defendant filed the instant Motion to Enforce Settlement on May 12, 2026, asserting that Plaintiff failed to execute and return the settlement documents in violation of the settlement agreement memorialized on the record and subsequent email correspondence confirming the agreement [20] Defendant seeks an order compelling Plaintiff to execute and return the following documents: (1) the Confidential Full and Final Receipt, Release and Settlement Agreement with Reservation of Rights; and (2) the Second Amendment to Condominium Declaration of Whitney and Sloo Two Condominium, a Condominium Association.[21] Defendant asserts that the proposed settlement agreement was drafted by Plaintiff's counsel on December 10, 2025, that initial proposals for changes to the two documents were provided on December 13, 2025, and that all parties agreed to the terms of the document by March 16, 2026, except for a dispute regarding use of the term "limited common element" or "ownership" with respect to the shared deck.[22] Defendant claims that the transcript from the settlement negotiations resolves this dispute.[23] Defendant then points out that Plaintiff's counsel filed a Motion to Withdraw on May 1, 2026, and speculates that it was due to Plaintiff's refusal to sign the agreed upon

---

[19] *See* R. Docs. 82 & 83.
[20] R. Doc. 89. *See* R. Docs. 89-2 & 89-3.
[21] R. Doc. 89-1 at pp. 1–2.
[22] *Id.* at p. 2.
[23] *Id.* (*citing* R. Doc. 89-3).

settlement documents.[24] Defendant contends that Plaintiff "has simply changed her mind about settling the matter" and is refusing to sign the documents in an attempt to withdraw her previous agreement set forth on the record.[25] Defendant asserts that because the parties perfected a settlement agreement on the record before the Magistrate Judge, Plaintiff cannot withdraw on the basis of "cold feet."[26] As such, Defendant requests an order requiring Plaintiff to execute the settlement documents, file a motion to dismiss this lawsuit with prejudice, "and to pay Defendant's costs in bringing this Motion."[27]

The Motion to Enforce Settlement Agreement was referred to the assigned Magistrate Judge on May 14, 2026.[28] On the following day, May 15, 2026, the Magistrate Judge issued an Order setting the Motion for an evidentiary hearing.[29] The Magistrate Judge further ordered the parties to file witness and exhibit lists, as well as proposed findings of fact and conclusions of law, by a set date and scheduled a telephone status conference. During the conference, which was attended by counsel for both parties and Plaintiff, Plaintiff advised the Magistrate Judge that William Brett Conrad no longer represented her and that she was considering retaining new counsel, but had not yet done so and did not require any additional time to do so.[30] Plaintiff confirmed that she would be prepared to proceed with or without counsel at

---

[24] R. Doc. 89-1 at p. 2.
[25] *Id.*
[26] *Id.* at p. 3.
[27] *Id.*
[28] R. Doc. 91.
[29] R. Doc. 92.
[30] R. Doc. 96.

the evidentiary hearing, and Plaintiff was advised that she should attach any documentary evidence to her opposition brief and identify it in her exhibit list.[31]

On June 29, 2026, proceeding *pro se,* Plaintiff filed her Opposition brief to the Motion, asserting that she did not "chicken out" of the settlement agreement.[32] Instead, Plaintiff claims that she did not receive the settlement documents from her counsel until April 2026.[33] While not a model of clarity, Plaintiff appears to request several revisions to the Settlement Agreement, including a provision stating that Defendant can park his golf cart in front of her store room "if it fits," and she claims it does not fit.[34] Plaintiff also appears to request a revision indicating that the owner of Unit 2 "shall have the use of the current covered parking space, Owned by Unit 2," so that when she sells Unit 2 it will include the parking space, the store room, and half of the shared deck located on the second floor of the building.[35] Plaintiff attached to her Opposition brief copies of email correspondence between herself and her prior counsel, as well as email correspondence between herself and Defendant's counsel.[36] Plaintiff claims that she is "willing to negotiate ownership of the store room area with Mr. Throne, for Unit 3 ownership of the deck, and cost of repairs from 2022 when he became ½ owner of the deck until present," but she "do[es] not agree that I owe Mr.

---

[31] *Id.*
[32] R. Doc. 102 at p. 2.
[33] *Id.*
[34] *Id.*
[35] *Id.* at p. 3.
[36] *Id.* at pp. 3–4 (*citing* R. Docs. 102-2, 102-3, & 102-4).

Throne's attorney fees."[37] Plaintiff maintains that the delay in this matter was not her intention or her fault, but the fault of her prior counsel.[38]

About a week later, on July 7, 2026, the undersigned granted the Motion to Withdraw filed by Plaintiff's counsel.[39] That same day, Defendant filed a Witness and Exhibit List and his Proposed Findings of Fact and Conclusions of Law.[40] The Magistrate Judge held an evidentiary hearing on July 14, 2026, during which Plaintiff and Defendant introduced exhibits, presented oral arguments, and Plaintiff proffered witness testimony.[41] At the conclusion of the hearing, the Magistrate Judge took the matter under advisement for the reasons stated on the record, and advised that an order would follow.[42]

On July 17, 2026, the Magistrate Judge issued a Report and Recommendation, recommending that this Court grant Defendant's Motion.[43] The Magistrate Judge found that there was an enforceable and binding settlement agreement, as the parties had negotiated a settlement of all claims on December 1, 2025, the material terms of which were memorialized on the record before the Magistrate Judge and recorded by a court reporter, and all parties confirmed on the record that they were entering into the agreement knowingly and voluntarily and with the intent to end the litigation.[44] To the extent Plaintiff objects to two provisions of the settlement documents prepared

---

[37] R. Doc. 102 at p. 5.
[38] *Id.* at p. 6 (*citing* R. Doc. 102-5).
[39] R. Docs. 94 & 98.
[40] R. Docs. 99 & 100.
[41] R. Doc. 103.
[42] *Id.*
[43] R. Doc. 105.
[44] *Id.* at p. 4 (*citing* R. Docs. 82 & 89-3 at pp. 7–8).

by the Defendant and his counsel, concerning her parking spot and Defendant's golf-cart parking spot, the Magistrate Judge found that Plaintiff agreed in open court that she would be entitled to the continued use of her covered parking space, but the parties did not agree that the future owner of her unit would be entitled to that same right of use.[45] The Magistrate Judge likewise found that the parties agreed on the record that Defendant could park his golf cart in front of Plaintiff's shed, that Defendant agreed to move it if Plaintiff needs additional access, and that Defendant would not park his golf cart within three feet of the door in front of her shed.[46] The Magistrate Judge concluded that the settlement documents prepared by Defendant and his counsel accurately reflect these agreed-upon terms.[47] Accordingly, the Magistrate Judge found that Plaintiff cannot back out of the settlement agreement or unilaterally alter its terms "based on a recent change of heart."[48] The Magistrate Judge therefore recommended that Plaintiff be ordered to: (1) execute the Confidential Full and Final Receipt, Release and Settlement Agreement with Reservation of Rights before a notary and two witnesses; (2) execute the Second Amendment to Condominium Declaration of Whitney and Sloo Two Condominium, a Condominium Association; and (3) provide the executed documents to defense counsel within fourteen days of the District Court's enforcement order.[49] The Magistrate Judge also recommended that the undersigned order the parties to file a notice of

[45] R. Doc. 105 at p. 4–5.
[46] *Id.* at p. 5 (*citing* R. Doc. 89-3 at p. 4).
[47] R. Doc. 105 at p. 5.
[48] *Id.* at pp. 5–6.
[49] R. Doc. 105 at p. 6 (*citing* R. Docs. 100-1 at pp. 19–26 & 28–35).

compliance confirming execution of the settlement documents, and to dismiss this case with prejudice after the notice of compliance is filed.[50]

On July 31, 2026, Defendant timely-filed an objection to the Report and Recommendation, to the extent that the Magistrate Judge failed to grant relief on his request for attorney's fees.[51] Defendant claims that Plaintiff delayed signing the settlement documents for six months, during which he incurred attorney's fees, and that the Magistrate Judge did not address his request in the Report and Recommendation.[52] Defendant argues that Plaintiff's refusal to sign the settlement agreement was vexatious and based on her changing her mind about the agreement that she previously made.[53] Defendant claims that Plaintiff's actions caused him to file the Motion to Enforce Settlement and caused him to incur unnecessary litigation expenses that should be awarded to him as a sanction for Plaintiff's conduct.[54] Defendant contends that courts have inherent authority to sanction parties for abusive litigation conduct, and Defendant attached a copy of the fees incurred, claiming that, "the amount of time and the fees charged are well within the locally accepted guidelines for similar work."[55] Alternatively, Defendant requests a hearing on the issue to allow Plaintiff to respond to his request for attorney's fees.[56]

---

[50] R. Doc. 105 at p. 6.
[51] R. Doc. 107.
[52] *Id.* at p. 1.
[53] *Id.* at p. 2.
[54] *Id.*
[55] *Id.*
[56] *Id.*

On September 11, 2026, without seeking leave of Court, Plaintiff filed an untimely Response to Defendant's Objection to the Report and Recommendation.[57] Plaintiff maintains that she did not receive the settlement documents until April 24, 2026, and challenges several billing entries from her prior counsel to the extent they suggest that counsel contacted her prior to April 24, 2026.[58] Plaintiff then disputes several provisions in the Second Amendment to Condominium Declaration of Whitney and Sloo Two Condominium, a Condominium Association, as well as several provisions in the Confidential Full and Final Receipt, Release and Settlement Agreement with Reservation of Rights, including the ownership of her covered parking space and the parking space for Defendant's golf cart.[59] Plaintiff asserts that she had no intention of refusing or delaying the settlement agreement, that she signed and returned the notarized settlement agreement to defense counsel, and that Defendant is abusing the litigation by trying to make her pay for his attorney's fees.[60]

On September 28, 2026, again without seeking leave of Court, Plaintiff filed an Addendum to Exhibit B of her Response to Defendant's Objection to the Report and Recommendation.[61] Plaintiff asserts that Exhibit B to her Response was only two pages long, and that it should have included eight pages, consisting of text messages from Defendant's contractor, emails between defense counsel and Plaintiff's former counsel, and minutes from a homeowner's association meeting.[62]

---

[57] R. Doc. 108.
[58] *Id.* at pp. 1–2 (*citing* R. Doc. 108-1).
[59] R. Doc. 108 at pp. 3–4.
[60] *Id.* at p. 4.
[61] R. Doc. 109.
[62] *Id.* at p. 1 (*citing* R. Doc. 109-1).

## II. LEGAL STANDARD

### A. Review of the Magistrate Judge's Report and Recommendation

Under 28 U.S.C. § 636(b)(1), the district court may refer dispositive matters to a magistrate judge, who then issues a report and recommendations. The district court must review *de novo* those portions of the report and recommendations to which an objection is made.[63] The Court reviews all other portions of the report and recommendations for clear error to determine whether they are contrary to law.[64] A decision is clearly erroneous or contrary to law "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[65] Here, Defendant only objects to the Report and Recommendation to the extent that it does not address his request for attorney's fees. Accordingly, the Court will review Defendant's purported request for attorney's fees *de novo*, while reviewing the remainder of the Report and Recommendation for clear error.

### B. Attorney's Fees

There are three avenues by which a federal court may award attorney's fees against a party who obstructed a litigation proceeding in bad faith: (1) Federal Rule of Civil Procedure 11; (2) 28 U.S.C. § 1927; and (3) the court's inherent power.[66] Rule 11 permits the Court to award reasonable attorney's fees and expenses as a sanction for documents filed for an improper purpose, "such as to harass, cause unnecessary

[63] 28 U.S.C. § 636(b)(1).
[64] *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989); Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).
[65] *Palacios Seafood, Inc. v. Piling, Inc.*, 888 F.2d 1509, 1513 (5th Cir. 1989) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)) (citation modified).
[66] *See Chambers v. NASCO*, 501 U.S. 32, 42–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

delay, or needlessly increase the cost of litigation."[67] Under Rule 11, however, the court may not impose a monetary sanction on its own unless it first issued a show cause order under Rule 11(c)(3), ordering "an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."[68] Pursuant to 28 U.S.C. § 1927, "a district court may shift reasonable fees to 'any attorney' 'who so multiplies the proceedings in any case unreasonably and vexatiously.'"[69] According to the Fifth Circuit, "[t]he court can shift fees only to counsel, not to parties."[70]

As to the third option, the Supreme Court has held that, "[f]ederal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process."[71] The Supreme Court further held that, "one permissible sanction is an assessment of attorney's fees – an order, like the one issued here, instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side."[72] The Supreme Court "has made clear that such a sanction, when imposed pursuant to civil procedures, must be compensatory rather

---

[67] FED. R. CIV. P. 11(b) & (c).
[68] Fed. R. Civ. P. 11(c)(5).
[69] *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002) (*quoting* 28 U.S.C. § 1927).
[70] *Procter*, 280 F.3d at 525.
[71] *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 107, 137 S.Ct. 1178, 1186, 197 L.Ed.2d 585 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Chambers*, 501 U.S. at 44–45, 111 S.Ct. 2123) (citation modified).
[72] *Goodyear*, 581 U.S. at 107, 137 S.Ct. at 1186 (quoting *Chambers*, 501 U.S. at 45, 111 S.Ct. 2123) (citation modified).

than punitive in nature."[73] As such, "a court's shifting of fees is limited to reimbursing the victim," meaning that, "the court can shift only those attorney's fees incurred because of the misconduct at issue."[74]

## III. ANALYSIS

After conducting a thorough review of the Magistrate Judge's Report and Recommendation, the parties' memoranda, and the record, the Court finds no clear error in the Magistrate Judge's finding that the parties entered into a binding and enforceable agreement that was memorialized on the record on December 1, 2025. The Court also finds no clear error in the Magistrate Judge's finding that the terms of the settlement agreement include that Plaintiff "shall be entitled to continue to have use of her current covered parking space," without reference to the future ownership of the space,[75] and that Defendant "may park his golf cart in front of Ms. Manship's shed but agrees to move it in the event she needs additional access and he shall not park his golf cart within three feet of the door, the front of the shed."[76] As such, the Court finds the Magistrate Judge's recommendation that Defendant's Motion be granted and that Plaintiff be ordered to execute the Confidential Full and Final Receipt, Release and Settlement Agreement with Reservation of Rights before a notary and two witnesses and the Second Amendment to Condominium Declaration of Whitney and Sloo Two Condominium, a Condominium Association, is not clearly

[73] *Goodyear*, 581 U.S. at 108, 137 S.Ct. 1178.
[74] *Id.*
[75] R. Doc. 89-3 at p. 4.
[76] *Id.*

erroneous or contrary to law. The Court therefore adopts the Magistrate Judge's findings with respect to the enforceability of the settlement agreement and its terms.

As to Defendant's Objection to the Report and Recommendation, which is based upon the Magistrate Judge's alleged failure to address his request for attorney's fees, the Court first points out that Defendant's Motion to Enforce Settlement Agreement does not include a request for attorney's fees.[77] Defendant only mentions a request for attorney's fees in the first and last sentences of his Memorandum in Support, which comments are seemingly made in passing.[78] The Memorandum in Support is otherwise silent as to the factual or legal basis for such an award.[79] In her Opposition brief, Plaintiff asserts very clearly, "I do not agree that I owe Mr. Throne's attorney fees."[80] Nonetheless, in the Proposed Findings of Fact and Conclusions of Law that Defendant subsequently filed, there is no reference to a request for attorney's fees beyond the following line: "It is further Ordered that Plaintiff shall pay to Defendant $________ in costs and attorney fees made necessary by the failure to timely execute the closing agreements in this matter."[81] More importantly, however, the Court has listened to the recording from the July 14, 2026 evidentiary hearing on the Motion to Enforce Settlement Agreement, and there was no mention of any request for costs or attorney's fees by Defendant. Moreover, Defendant did not introduce any exhibits at

[77] R. Doc. 89 at p. 1.
[78] R. Doc. 89-1 at pp. 1 & 3.
[79] *See, generally*, R. Doc. 89-1.
[80] R. Doc. 102 at p. 6.
[81] R. Doc. 100 at p. 4.

the hearing regarding his request for attorney's fees, such as billing records from his counsel.[82]

The only argument made in support of Defendant's purported request for attorney's fees came *after* the issuance of the Report and Recommendation, in Defendant's two-page Objection thereto. Defendant's entire argument is contained in the following three sentences:

> It is clear that the plaintiff's refusal to sign the settlement agreement to which she had previously consented was vexatious and was based on the fact that she simply changed her mind about the agreement that she had previously made. Under such circumstances, the filing of the motion to compel execution of the settlement agreement (Doc. 89) caused unnecessary litigation expenses for the defendant which should be awarded to him as a sanction for plaintiff's conduct.
>
> Courts have inherent authority to sanction parties for abusive litigation conduct.[83]

Defendant cites no legal authority in support of his request for attorney's fees.

While Plaintiff's conduct and significant delay or refusal to sign the Settlement Agreement in this matter may have risen to the level of bad faith, the Court finds that an award of reasonable attorney's fees is not appropriate in this matter based on the record before it. The Court recognizes that another Section of this Court has awarded attorney's fees when a party "inexplicably reneged on a binding settlement agreement and then unnecessarily multiplied proceedings by opposing enforcement of the settlement agreement with no factual predicate in support of their opposition."[84] As in that case, Plaintiff contested certain terms of the settlement

[82] R. Doc. 104.
[83] R. Doc. 107 at p. 2.
[84] *Procaccino v Jeansonne*, Civ. A. No. 17-4748, 2017 WL 6733722, at *4 (E.D. La. Dec. 29, 2017) (Feldman, J.).

agreement that she had previously voluntarily entered into on the record before the Magistrate Judge. Unlike the record in that case, however, there is no motion for attorney's fees before the Court. Further, Plaintiff did not request attorney's fees in the Motion, in his Proposed Findings of Fact and Conclusions of Law, or during the evidentiary hearing held on July 14, 2026. As such, there was no basis for the Magistrate Judge to award attorney's fees, and the Court likewise finds that an award of attorney's fees is not supported by the record.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Enforce Settlement Agreement[85] is **GRANTED**. Plaintiff, Kelly Manship, shall have **fourteen (14) days** from the date of this Order to: (1) execute the Confidential Full and Final Receipt, Release and Settlement Agreement with Reservation of Rights before a notary and two witnesses; (2) execute the Second Amendment to Condominium Declaration of Whitney and Sloo Two Condominium, a Condominium Association; (3) provide the executed documents to defense counsel; and (4) file into the record a notice of compliance confirming execution of the settlement documents. Once the notice of compliance is filed, the Court will dismiss this matter with prejudice pursuant to a final judgment after which jurisdiction in this Court will terminate and any further challenges will lie with the court of appeals. Failure to timely comply with this Court Order shall result in sanctions, including but not limited to, attorney's fees.

---

[85] R. Doc. 89.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send Kelly Manship a copy of this Order via first-class and certified mail at her address of record, and by email below.

New Orleans, Louisiana, October 29, 2026.

Wendy B. Vitter

**WENDY B. VITTER**
**United States District Judge**

**CC via email:**

**Kelly Manship <manshipkelly@gmail.com>**